**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

UNITED STATES OF AMERICA,  )
                                  Plaintiff,  )
                                        )    2:11-cr-00110-RLH -VCF-1
v.   )
                                        )    **O R D E R**
DE RONG SHANG,  )
                                  Defendant.  )

       Before the court is defendant De Rong Shang's Motion To Strike Surplusage. (#83). The government filed an Opposition (#94), and defendant Shang filed a Reply (#104).

       Also before the court is defendant Shang's Motion for a Bill of Particulars. (#84). The government filed an Opposition (#95), and defendant Shang filed a Reply (#105).

       Defendant Shang also filed a Motion To Compel Discovery. (#85). The government filed an Opposition (#93), and defendant Shang filed a Reply (#99). The court held a hearing on January 20, 2012.

**Procedural History**

       On March 22, 2011, the government filed an indictment against defendants Shang and Eaton for mail fraud (18 U.S.C. § 1341), conspiracy to commit mail fraud (18 U.S.C. § 1349), and aiding and abetting (18 U.S.C. §2). (#1). On April 29, 2011, Mr. Shang appeared before the court at his initial appearance and arraignment and plea, and entered a plea of not guilty. Subsequently, on May 5, 2011, Ms. Eaton made her initial appearance and entered a plea of not guilty. Upon stipulation by the parties (#28), the court continued the trial date until October 17, 2011. (#29).

       On July 15, 2011, defendant Shang filed a motion to dismiss the indictment, because "[b]y virtue of the [i]ndictment's own allegations,...the [g]overnment cannot state an offense under Mail Fraud statute, 18 U.S.C. § 3141." (#30). On the same day, the defendants filed a joint motion to sever

defendants' trial. (#31). After oral argument on the motion to dismiss (#30), on September 26, 2011, the court filed a report and recommendation (#51), recommending that the indictment be dismissed because the indictment did not demonstrate that the mailing of the letters to the bank were in furtherance of the scheme to defraud, and because the mailings occurred *after* the defendants completed the scheme. The government filed an objection (#52) on September 26, 2011, and defendant Shang filed a response to the objection on October 3, 2011. (#53).

On October 7, 2011, the court issued an order granting the motion to sever the trials of defendants Eaton and Shang. (#56). The court held that severance was warranted because of defendant Eaton's pre-indictment interview that contained "inculpatory statements...which may be prejudicial to Mr. Shang and deny his confrontation rights guaranteed by the United States Constitution." *Id.* The court stated that neither redaction of the interview nor limited instructions would secure a fair trial to defendant Shang. *Id.*

Trial was set for October 17, 2011, at 8:30 a.m. On October 11, 2011, the government filed superseding indictments as to Shang and Eaton, alleging claims for conspiracy to commit wire fraud (18 U.S.C. § 1349), wire fraud (18 U.S.C. § 1343), and aiding and abetting (18 U.S.C. §2), relating to events that allegedly occurred between December of 2006, through at least April of 2007. (#57). Wire fraud is defined as "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice..." 18 U.S.C. § 1349.

On October 12, 2011, at calendar call, the Judge Hunt held that in light of the superseding indictment (#57), the motion to dismiss (#30) was moot. The trial for Shang was set for October 31, 2011, but was subsequently continued to February 6, 2012. (#69). Pursuant to Judge Hunt's Order Regarding Trial, calendar call is set for February 2, 2012, and the parties are required to provide to the

courtroom administrator and file with the court all exhibit lists, proposed voir dire, proposed jury instructions, witness lists, and trial briefs. (#109).

On December 21, 2011, defendant Shang filed several motions that are now pending before the court. This order will address defendant Shang's motion to compel (#85), motion for a bill of particulars (#84), and motion to strike surplusage (#83).

**Motion To Compel (#85)**

In the motion to compel discovery, defendant Shang asks this court to compel discovery in the form of (1) producing witness lists, both expert and non-expert, (2) deposing an unavailable witness, and (3) producing specific documents: bank records, surveillance, plea agreements, etc. (#85).

    **A.**    **Government Witness List**

        **1.**    **Arguments**

Defendant asks this court to order the government to produce "a meaningful list of all of the witnesses it intends to call at trial." *United States v. Grace,* 526 F.3d 499, 509 (9th Cir. 2008). Defendant argues that the government should produce this list, in order to afford Mr. Shang effective confrontation and cross-examination of the witnesses as guaranteed by the Sixth Amendment. (#85).

The government opposes this request, and argues that it is not required to identify witnesses it intends to call at trial. (#93); *United States v. Sukumolachan,* 610 F.2d 685, 688 (9th Cir. 1980). The government asserts that, although the Ninth Circuit has not flatly precluded the district court from ordering discovery of potential witnesses, the Ninth Circuit has held that a defendant must make a *specific showing* that discovery of the potential witnesses is material to the preparation of their defense and reasonable in light of the circumstances. *Id*; *United States v. Richter,* 488 F.2d 170, 175 (9th Cir. 1973). The government argues that the defendant has only shown a *general* need for the witness list, and therefore, the request is insufficient and does not support an order of this nature. *Id.*

The government asserts that it will turn over a witness list in accordance with this court's standard order regarding trial, as the defendant has shown no reason to deviate from that order. (#93).

With regard to expert testimony, the government asserts that it will turn over the names and a summary of the testimony in compliance with the joint discovery agreement and Federal Rule of Criminal Procedure 16(a)(1)(G). *Id.*

In defendant Shang's reply, he presents arguments relating to the disclosure of the non-expert witnesses. (#99). Defendant Shang argues that obtaining the witness list before trial is material to Mr. Shang's defense, because of the magnitude of the conspiracy alleged: (1) "the alleged conspiracy in this case involved numerous co-conspirators and/or recruits," (2) the government disclosed for the first time in an opposition to the motion to exclude Linda Zeng, that Ms. Zeng provided the FBI with "ten names" of witnesses, (3) the conspiracy allegedly spanned over a period of six months between 2006 and 2007, and (4) the events occurred at three separate casinos, increasing the number of witnesses who could potentially be called to testify. *Id.* Defendant Shang also asserts that "in light of the four-year pre-trial delay, most employees from the subject casinos are no longer employed or have left the jurisdiction," which gives the government a prejudicial advantage over Mr. Shang to investigate the case. *Id.* As far as the "general" statement of need that the government argues defendant has demonstrated, defendant contends that "in light of the specific circumstances" discussed above, Shang has demonstrated that the information is material to his defense and warranted under the legal authority. *Will v. United States*, 389 U.S. 90, 99 (1967).

### 2. Relevant Law

Fed. R. Crim. P. 16(a) governs discovery and inspection of the government's evidence. Rule 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). "Although Rule 16 does not expressly mandate the disclosure of nonexpert witnesses, it is not inconsistent with Rule 16 and Rule 2 for a court to order the government to produce a list of such witnesses as a matter of its discretion." *United States v. Grace,* 526 F.3d 499, 510 (9th Cir. 2008). Rule

4

16 "does not entitle the defendant to a list of such witnesses, but by the same token it does not suggest that a district court is prohibited from ordering such a disclosure." *Id.* at 511. "[A] district court...may, in appropriate circumstances require the government to disclose a final list of its proposed trial witnesses and has the authority to enforce such an order." *Id.* at 513.

### 3. Discussion

The court's order regarding trial indicates that the witness lists are to be provided to the courtroom administrator and filed with the court on February 1, 2012. (#109). The court finds that the federal rule regarding expert witness lists is very clear, and dictates that upon the defendant's request, "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). Thus, the government is hereby ordered to provide defendant Shang with information regarding its expert witnesses in accordance with Rule 16 by Tuesday, January 24, 2012, at 4:00 p.m.

With regard to the nonexpert witnesses, the court finds that it is appropriate in these circumstances for the government to provide defendant Shang with its final list of proposed trial witnesses. *Grace,* 526 F.3d at 513. The allegations involve multiple co-conspirators and recruits, several casinos with a number of employees that could be potential witnesses, and occurred over four years ago, which provides the government with an advantage with regard to investigating and interviewing witnesses. See *United States v. Sukumolachan,* 610 F.2d 685 (9th Cir. 1980)(holding that the defendant was not entitled to the witness list prior to trial when the defendant was "well aware of [the] existence and possible testimony" of the informant that testified, and the other witness provided straightforward information about where the defendant lived.). Further, as the trial is nearing, with calendar call roughly a week away, ordering the government to produce its witness list is not unreasonable, and will not be used for the purpose of discovery.

. . .

**B.      Deposing Out-Of-State Witness**

  **1.      Argument**

Defendant Shang asks this court to permit the deposition of out-of-state witness Mr. John To. (#85). Defendant Shang asserts that Mr. To, a former casino host for one of the subject casinos during the relevant time period, is the only witness[1] that can provide exculpatory testimony that will support Shang's defense. *Id.* However, Mr. To has informed counsel that he will "most likely not be able to attend the upcoming trial," because of his financial situation and work schedule. *Id.* Therefore, defendant Shang asks for an order permitting defendant to take the deposition of *material* witness Mr. To in San Gabriel, California, by means of video transcription. *Id.*

The government opposes the request (#93), and asserts that the defendant has not demonstrated the requisite "exceptional circumstances" that warrant permitting the deposition of a prospective witness. Fed. R. Crim. P. 15(a)(1). The government argues that there is no evidence that the witness is unable to come to Las Vegas, as he is not sick or living substantially far away. (#93). The government asserts that the reasons defendant Shang provides in support of his motion are "grossly insufficient." *Id.*

In support of the request, defendant Shang provided the court with the affidavit of Mr. To, to explain why Mr. To is unable to attend the trial. (#99-1). Mr. To asserts in his affidavit that he lives in Monterry Park, California, is currently in foreclosure and is going through a loan modification process (where he must make certain monthly payments at a reduced rate *on time*), and that he just began working at MGM resorts on an hourly basis. *Id.* Mr. To contends that if he misses work, he will receive a lower paycheck, which will "impact his ability to attain the amount of money [he] need[s], per month, to ensure that [he] does not miss or make a late mortgage payment." *Id.* The defendant argues

---

[1] Defendant contends that there is a missing witness, Mr. Slack, and that Mr. To was employed by Mr. Slack, and worked on Slack's "Asian Marketing" team. Mr. Slack, as a manager at several casinos, signed off on most of the alleged "credit received." Mr. Slack has fled since the indictment was filed, and is unavailable to testify. Mr. To, as Slack's employee with knowledge of the events, is the only individual that can provide this exculpatory testimony.

6

to the court that in light of these "exceptional circumstances," permitting the deposition of material witness Mr. To is warranted. (#99).

### 2. Relevant Law

Pursuant to Fed. R. Crim. P. 15(a)(1), "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of *exceptional circumstances* and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data." The Ninth Circuit has held that "[i]t is within the sound discretion of the trial court to grant or deny a motion to depose a proposed witness in a criminal trial." *United States v. Richardson*, 588 F.2d 1235, 1241 (9th Cir. 1978)(denying the request to depose witnesses, three of whom were fugitive co-defendants and one who was an unindicted co-conspirator whose location was unknown.).

When determining if the deposition is warranted, the court looks at whether the unavailable witness is the defendant's own witness, the deposition is being used as a discovery tool, "the deponent would be available at the proposed location for deposition and would be willing to testify," and whether "the safety of United States officials would be compromised by going to the foreign location." *United States v. Rich,* 580 F.2d 929, 934 (9th Cir. 1978)(denying a motion to take the deposition of the government's witness which would be used for discovery purposes); *United States v. Olfason,* 213 F.3d 435, 442–443 (9th Cir. 2000)(denying the deposition of Mexican individuals, because there was no evidence that the witnesses would cooperate and it was dangerous to send the American attorneys and investigators into Mexico for the depositions).

### 3. Discussion

The court finds that defendant Shang has demonstrated that "exceptional circumstances" exist that support permitting the deposition of Mr. To. Fed. R. Crim. P. 15(a)(1). Mr. To is a material witness whose testimony is unavailable through any other source, and it is in the interest of justice to

preserve his testimony for trial. *Id.* Mr. To is willing to testify and cooperate, but is unable to attend trial for fear of losing his home. See *Olfason*, 213 F.3d at 442–443. Further, the deposition of Mr. To will not take place in a foreign nation, and there is no concern for the safety of the attorneys in traveling to California for the deposition. See *Id.*

Thus, defendant Shang is permitted to take Mr. To's deposition, and, to ensure that the deposition is not being utilized as a discovery tool, defense counsel shall steer clear of questions other than those required to establish facts known by the witness which can be admitted into evidence at trial. See *Rich,* 580 F.2d at 934. The government shall make objections during the deposition as it would during the trial.

### C. Additional Production of Discovery

#### 1. Arguments

On November 21, 2011, defense counsel delivered a discovery letter to the government seeking certain documents and information, as well as proposing to enter into evidentiary stipulations. (#85-2). Defendant still seeks to obtain several items, and asks this court to order the government to produce such documents. (#85). After the government provided its responses to the requests in its opposition (#93), the defendant still disputed the government's responses relating to three forms of discovery: (1) records from a new subpoena allegedly served upon the subject Bank of America in or about November 2011, (2) a written summary of any expected testimony of any expert witnesses the government intends to introduce at trial, and (3) notice of government's intention to use evidence at trial pursuant to Rule 12(b)(4)(B) and 16(a)(1)(E)(ii). (#99).

The government stated in its opposition, that it would provide defendant Shang with a copy of the Bank of America records when it receives the records. (#93). At the hearing held on January 20, 2012, the government told the court that it received some documents in response to the subpoena, and that it had produced those documents in an email to defense counsel. Further, the government asserted that it believed that there were still checks from the bank that would be forthcoming. Defense counsel

asserted during the hearing the that counsel did not receive any documents that were responsive to the subpoena and was not aware of what specific records the subpoena sought.

With regard to the expert witness list, defendant Shang asserts that the government is required to provide the list pursuant to Fed. R. Crim. P. 16(a)(1)(G). Defendant Shang also argues that the government is required to provide the defendant with its intent-to-use evidence under Rule 12, and that the exhibit list should be provided before calendar call in light of the thousands of pages of documents involved in the action.

### 2. Relevant Law

As the court has previously stated, Rule 16(a)(1)(G) requires that the "government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). Pursuant to Rule 12(b)(4)(B), "[a]t the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)©, request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B). Rule 16(a)(1)(E)(ii) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and...the government intends to use the item in its case-in-chief at trial..." Fed. R. Crim. P. 16(a)(1)(E)(ii).

### 3. Discussion

During the hearing, the government stated that it would provide defendant with a copy of the Bank of America subpoena and any records it has obtained to date. Therefore, the government must provide defendant Shang with a copy of the subpoena and the bank records it has in its possession by Tuesday, January 24, 2012, at 4:00 p.m. If the government fails to do so, the court may prohibit the

9

government from introducing the records at trial. *See* Fed. R. Crim. P. 16(d)(2)©.

As the court ordered the government to provide the defendant with the expert witness list in section A3 above, the court need not address this issue here. *See* Fed. R. Crim. P. 16(a)(1)(G)(requiring the production of a summary of the government's expert's testimony.). With regard to the intent-to-use evidence, the government is ordered to provide the defendant with notice of any evidence it intends to use in its "evidence-in-chief" by Tuesday, January 20, 2012, at 4:00 p.m. *See* Fed. R. Crim. P. 12(b)(4)(B) and 16(a)(1)(E)(ii). The court's order regarding trial requires the parties to file and provide the court with their exhibit lists at calendar call on February 1, 2012. As the court is only requiring the production of the exhibit list roughly a week before calendar call, and as there is allegedly thousands of pages of discovery, the order is not unreasonable and is in the interest of justice.

**Motion For Bill of Particulars (#84)**

Defendant Shang seeks a bill of particulars with regard to the forfeiture allegation in the indictment and the name and addresses of all unindicted co-conspirators that the government intends to call as witnesses against Shang. (#84).

    **A.**    **Forfeiture Allegations/ Co-Conspirators**

        **1.**    **Arguments**

With regard to the forfeiture allegations, the defendant asserts that the allegation is "overinflated and contradicts" the indictment's actual allegations by approximately eight hundred thousand dollars ($800,000). *Id.* The defendant argues that the indictment fails to apprise Shang of the "full extent of the charges levied against him, because it fails to allege what acts beyond those set forth in the "overt acts" section of the indictment amount to a monetary loss of more than a million dollars." *Id;* See *United States v. Kendall*, 665 F.2d 126, 130 (9th Cir. 1981) (holding that "[t]he test for whether a bill of particulars is necessary is 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.").

The government argues that the forfeiture allegation is the "total loss from the entire scope of

the conspiracy," and that included in the "several thousand pages of discovery," are the financial records that encompass the entire conspiracy and the individuals involved. (#95); *United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984)(holding that full discovery obviates the need for a bill of particulars."). Thus, the government argues, the bill of particulars is unnecessary. (#95).

As far as the information relating to the co-conspirators, defendant Shang argues that, in light of the conspiracy charge, the court should order the government to produce particularized information regarding the identities of all alleged co-conspirators, including dates, locations, and nature of any overt acts allegedly committed by Mr. Shang and each of the identified co-conspirators. (#84). The government opposes this request, and asserts that the indictment contains all the elements of the offense, specifically describes the conspiracy by listing the individual transactions, and fairly informs the defendant of the charges, and that the manner and means and overt acts sections are over a dozen paragraphs and span 6 pages. (#95). The government asserts that it has provided complete discovery, and that the financial records and reports, which include records related to any co-conspirator and uncharged relevant conduct, are included in that discovery. (#95).

**2.     Relevant Law**

"A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute. The notice should not be designated as a count of the indictment or information. The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." Fed. R. Crim. P. 32.2(a).

"The bill of particulars has three functions: to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such

purposes." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). Full discovery, however, "obviates the need for a bill of particulars." *Id;* See also 8 Moore's Federal Practice P 7.06(1) at 7-33.

### 3. Discussion

As the court has ordered the government to provide defendant Shang with full discovery, including bank records, witness lists, and exhibit lists, the court finds that defendant Shang will be fully apprised of the "nature of the charge[s] against him," will not face any "surprise at the time of trial," and will be able to plead his "acquittal or conviction in bar of another prosecution." *Id.*

**Motion To Strike Surplusage (#83)**

Defendant Shang asks this court to strike the following surplusage in the indictment: (1) allegations and/or references to Yuli Eaton in whole or part pursuant to Judge Leavitt's order severing defendants (#56), (2) the forfeiture allegation in whole or in part, and (3) paragraph 12(I) of the indictment. (#83). Defendant Shang asserts that these items, if shown to the jury, would be prejudicial to defendant. *Id.* Further, the defendant asks this court to amend the indictment to reflect the defendant's actual American name, Owen Shang. *Id.*

Pursuant to Fed. R. Crim. P. 7, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." The rule is intended to "protect the defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Terrigno,* 838 F.2d 371, 373 (9th Cir. 1988). However, even if facts are "somewhat prejudicial," they may be "relevant material to the charge" in the indictment, and therefore would withstand a motion to strike surplusage. *Id.* at 373. In addressing amendments to the indictment or information, Moore's Federal Practice Criminal Procedure § 607.06 states that "[i]f a trial jury is permitted to see the indictment, and if any language of that indictment is surplusage, the preferable course is to prepare a retyped "clean" version of the indictment omitting any language to be disregarded without any indication of its omission."

The government represented to the court during the hearing that in his experience with trials

12

before Judge Hunt, the indictment will not be read to the jury during the trial or given to them during deliberations. Therefore, the parties and the court are proceeding with the understanding that the indictment will at no time be read or given to the jury. Thus, defendant Shang's requests to strike several items from the indictment because of possible prejudice should be moot. However, if Judge Hunt decides at any time during the trial to permit the indictment to be read or given to the jury, the following rulings will govern, and the indictment shall be amended accordingly. *See* Moore's Federal Practice Criminal Procedure § 607.06.

### A. Reference To Yuli Eaton

#### 1. Arguments

Defendant Shang asserts that despite the Judge Leavitt's order severing defendants, the government still filed the superseding indictment against both Eaton and Shang, jointly, as co-defendants. (#83). The defendant argues that the indictment's reference to Mrs. Eaton is prejudicial to the defendant, as it gives the jury the impression that the alleged conspiracy is larger than it is, and should be stricken accordingly. *Id.*

The government opposes the request to strike, and argues that the severance order simply mandated that "co-defendants will not be tried together because certain evidence may not be admissible against another defendant," and does not change the allegations that Eaton and Shang conspired together or the allegations against defendant Shang as it relates to the conspiracy and scheme to defraud. (#94). Thus, the government asserts, all Shang is entitled to is the removal of Eaton's name from the caption, and not the striking of "any and all" reference to Eaton. *Id.*

#### 2. Relevant Law

Pursuant to Moore's Federal Practice Criminal Procedure § 607.06, "[s]ome redactions, *such as removal of codefendants who have been severed* or who have pleaded out, are *usually undisputed*." (emphasis added). A motion to strike surplusage should be denied if the words or name are an essential element of the crime charged or relevant and material to the charge. *United States v. Terrigno,* 838 F.2d

371, 373 (9th Cir. 1988)

### 3. Discussion

The court finds that co-defendant Eaton's name is neither material to, nor an essential element of the crime charged, as the trials have been severed and defendant Eaton is now no different from any other known co-conspirator alleged to have been involved. *Terrigno,* 838 F.2d 373. The government concedes to striking Eaton's name from the caption (#94), and the court orders the same. Further, if the indictment is shown or read to the jury at any time, Eaton's name is ordered stricken from pages three, five, and six, as her name is not an essential element of the crime, and the fact of how much she was paid and how she assisted Shang has no relevance to the charges against Shang. *Id.*

## B. Forfeiture Allegations

### 1. Arguments

Defendant Shang argues that if the jury reads the million dollar forfeiture allegation, it will likely presume that the alleged conspiracy was significantly more "magnificent" than the indictment's allegations allege. (#83). The government opposes the request, and asserts that since the forfeiture is something that is dealt with *after* trial or a guilty plea, the jury will not be deciding the forfeiture allegation and will not be presented with it. (#94). Therefore, no prejudice can occur. *Id.*

### 2. Relevant Law

"As soon as practical after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A).

. . .

14

### 3. Discussion

Since the jury is not determining whether the forfeiture provision is accurate or whether the government has provided support for its forfeiture allegation, and the court will be addressing this issue *after* trial, if the indictment is ever read or given to the jury, the indictment shall be redacted as to omit the forfeiture provision in its entirety. *See* Fed. R. Crim. P. 32.2(b)(1)(A). The forfeiture provision shall remain in the indictment for all other purposes.

### C. Paragraph 12(l)

In the superseding indictment, paragraph 12(l) reads as follows: "After approximately 30 days, the casino would attempt to collect the unpaid markers by attempting to cash the markers as checks against the recruits' bank accounts. These checks were ultimately returned to the casino marked insufficient funds or account closed." (#57).

### 1. Arguments

Defendant argues that paragraph 12(l) should be stricken because it relates to the original indictment, which alleged mail fraud, and not the superseding indictment, which alleges wire fraud. (#83). Defendant Shang asserts that paragraph 12(k) already alleges that "the casino would be left with the recruit's unpaid debt," which negates the need for paragraph 12(l). *Id.* The allegation in paragraph 12(l) relating to the "after the fact" mailing, defendant argues, is not legally relevant, opens the door to a prior defective charge, and should be stricken. *Id.*

The government asserts that the paragraph is relevant in demonstrating that the recruits' bank accounts were emptied, and that this caused the casinos to suffer a monetary loss. (#94). The government argues that there is nothing prejudicial about the factual allegations that warrant striking. *Terrigno,* at 373.

### 2. Relevant Law/Discussion

The Ninth Circuit held that in order to strike a section of the indictment as surplusage, there must be a finding that the section is both irrelevant and prejudicial. *Id.* Here, the court finds that there is no

15

prejudice caused to the defendant by the inclusion of paragraph 12(l). The paragraph is relevant, however, in demonstrating that the accounts were emptied or closed, causing the casinos to suffer a loss. This allegation relates to the charge of wire fraud, in demonstrating that Shang and the other recruits had a scheme to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises..." 18 U.S.C. § 1349.

### D.    Defendant Shang's American Name

#### 1.    Arguments

The superseding indictment refers to defendant Shang as "Jason Shang." (#57). However, defendant Shang alleges that his true American name is "Owen," and that his son's name is actually "Jason." (#83). Therefore, defendant Shang asks this court to amend the indictment to reflect his actual name. *Id.* This would only change the "form" of the indictment and not the substance, defendant argues, and would not create any prejudice. *Id.* Defendant Shang asserts that to not change the name would subject his son to the "threat of being mistakenly accused of criminal charges or standing trial in a separate state." *Id.*

The government opposes the request to change the name, and asserts that the name "Jason" is utilized because that is the alias that defendant used while committing the crimes alleged. (#94). The government asserts that the alias "Jason" is necessary to connect the defendant to the accused acts, as multiple witnesses the government intends on calling know the defendant as "Jason," and are not familiar with a person named "Owen." *Id.* Referring to the defendant as Owen would cause confusion to both the witnesses and the jury. *Id.* Further, the government asserts, "Jason," is not a prejudicial name, i.e. it does not include a prejudicial term which would cause the jury to judge defendant Shang based on his name. *Id.*

#### 2.    Relevant Law

The Ninth Circuit has held that "making corrections of typographical errors or making changes that are merely a matter of form are constitutionally permissible, and a portion of the indictment that

the evidence does not support may be withdrawn from the jury, provided nothing is thereby added to the indictment and provided the remaining allegations charge an offense." *United States v. Dawson*, 516 F.2d 796 (9th Cir. 1975). Amending the indictment to conform the indictment to the accused preferred name is proper as long as the offense charged is not changed and the rights of the defendant are not prejudiced. *United States v. Perez*, 776 F.2d 797, 799 (9th Cir. 1985)(permitting the indictment which originally named "Gregorio C. Perez Jr. aka Junior Perez," to be changed by amendment to "Junior Cruz Perez."). "Only when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial." *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001).

### 3. Discussion

Here, defendant Shang identified himself to the alleged recruits, co-conspirators, and other witnesses as "Jason Shang." During the course of the trial, if the witnesses identify and answer questions about a Jason Shang, and the attorneys and the court refer to Owen Shang, there is a possibility of confusion and disconnect in the minds of the jury. The name Jason will identify the defendant as the individual alleged to have been engaged in the conspiracy, and will eliminate any possibility of confusion. *Emuegbunam*, 268 F.3d 377, 394. Further, the name Jason in no way, on its own, creates a prejudice in the minds of the jury. *United States v. Clark*, 541 F.2d 1016 (4th Cir. 1976)(stating that the court would have forbidden the use of the alias "Mauser" (a type of German gun) in the indictment if the defendant had renewed his motion to strike). Therefore, the indictment shall not be amended, and shall reflect the name of "JASON SHANG."

Accordingly, and for good cause shown,

IT IS ORDERED that defendant De Rong Shang's Motion To Strike Surplusage (#83) is GRANTED in part and DENIED in part, as discussed above.

IT IS FURTHER ORDERED that defendant Shang's Motion for a Bill of Particulars (#84) is DENIED, as discussed above.

IT IS FURTHER ORDERED that defendant Shang also filed a Motion To Compel Discovery (#85) GRANTED, as discussed above. The government shall provide the requested documents by Tuesday, January 24, 2012, at 4:00 p.m. Defendant may take Mr. To's deposition solely for the purpose of preserving his testimony for trial.

DATED this 23rd day of January, 2012.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

18